Your Honor, Carl Gunn from the Federal Public Center in L.A. representing Mr. Norris. I'm going to try to save three minutes of my time for rebuttal, but if it doesn't work out that way, so be it. There are two basic sets of issues here, one set rather narrow and one set, I think, rather broad. The first set is whether the justification given for the stop by the officers can stand, both in terms of their initial reasonable suspicion or lack thereof and in terms of what they did once the stop was made. The second set of issues is how broadly we're going to let the parole search exception sweep. Does it let the police seize the parolee personally and make him come to the site of where they want to conduct a parole search? Will we allow destruction of property in a parole search, a suspicionless parole search? Does the parole search exception allow random traffic stops since someone's just minding their own business driving down the highway in addition to searching the house or stopping someone on the street? Can the government use the authorizing statute to justify a parole search, but then say we don't want to look at any of the other statutes that might place limitations on what officers can do? Let me ask you this. Is it your position that the evidence that you're seeking to suppress was derived from the stop or the search of the house? Both, Your Honor. The government makes what I characterize as an inevitable discovery argument in their brief, and of course our position is that wasn't made below sufficiently and so shouldn't be considered. But even if it was, I think it is quite clear that the search here would not have taken place but for the stop. For two reasons. First of all, they didn't do it that way and have declarations basically saying we were supposed to stop the guy and do that. And second, one of the major things the government relies on is a justification for the probable cause necessary for the search is one of the things Mr. Norris said, allegedly anyway, when he was stopped, namely that he was, quote, staying at, unquote, this address. Second, there is now this sort of last step of the illegality, if that's the only illegality there was, where they actually seized Mr. Norris and took him along to the search. The search itself might not be a fruit of that, but it's a fruit of everything except that. The statements are a fruit of everything because if Mr. Norris hadn't been stopped and seized and then held, who knows if he would have been arrested, when he would have been arrested, and who knows what statements he would have made in that different context, hours or days or weeks later. So there is no question that the statements are a fruit of any one of the illegalities that we're claiming here. The search is a fruit of every one except perhaps the removal from the scene of the detention, if that was the only place there was a violation. But, of course, we're arguing that there were violations at a whole bunch of additional stages before that. Maybe I can address that last point first because I think that is the most egregious effort or extension of the parole search exemption here. The idea that you can take the parolee physically, wherever you find him, and say, we're going to search your house, we're not only going to search your house without suspicion, but we're going to take you with us. There is absolutely nothing in the parole search exception case law that suggests a suspicionless parole search exception allows the parolee's person to be physically seized and moved just so the police can have him there while they happen to do the search. There is nothing in the case law to support that. But, in fact, one can detain and stop someone for a period of time that lasts no longer than necessary to effectuate the purpose of the stop, can't they? If there's a basis for the stop, yes. I understand that. We're on the second part of this. I'm addressing the issue you now address. My worry is that here we have a situation where we have a district judge who has the evidence in front of him, and he's now determining what was temporary and whether it lasted no longer than necessary to effectuate the purpose. But let me step back, Your Honor, because I think in your question you're assuming something about the purpose that is inaccurate here. If there was a justification for stopping Mr. Norris... Well, I started where you started. You started at the end. So I think your real question really then bangs down on, was there a reasonable stop in the first place? But also, Your Honor, even if there was, there was no legitimate purpose for moving him. The purpose of the stop was either to check out this believed to be cracked windshield, or it was to maybe conduct a parole search of his person or his car. Once those things were done, there was no additional purpose to that stop. It was not a legitimate purpose of the stop to say, oh, we want to have him when we search the house. But when you stop, once he's stopped, then you can ask, I mean, the police can ask questions that are even unrelated to the stop. I think they can if they're also doing things that were related to the purpose of the stop to start with. If they're in the process of writing a ticket and or checking the windshield, yes. I don't think the Mueller v. Mena and the other Ninth Circuit cases, though, say they can completely ignore that purpose and do something, but something unrelated. Unless the questions as answered lead them to that conclusion. Right. But I don't think they can, if all they do... What he says leads them to that conclusion. While they're doing what they did to stop him, and they're doing what they had to do in an effort of the stop, they ask questions, and the things that he then answers leads them to other questions. There's nothing to suggest they can't go there. The problem here is they did nothing at all when they stopped him related to the windshield claim. Nothing at all. They were basic questions, right? Where do you live? I mean, what if they do that was unrelated? What questions did they ask that were unrelated or that were not background questions? Well, first of all, of course, they handcuffed him, and that's another issue. Were they in any business immediately handcuffing him? The first thing they did was handcuff him. That doesn't violate the Constitution. I think it does, Your Honor. The cases say if all it is is a traffic stop, that violates the Constitution unless you have some of the exceptional circumstances that are laid out in Washington v. Lambert, which I don't think we have here. But here, I don't want to get you off base. Off your answer, I thought her question was pretty good, so I'd like you to answer it. But don't talk about whether the handcuff. Get to the answer to her question, because the handcuff, we've got another situation we can come up with that. So get to her answer. Almost like a law school exam I thought that worked out. But, Your Honor, the questions that they ask after the handcuffing, which I will throw in, is they ask, is he on parole? Where does he live? There were two or three other questions. None of them had anything to do with, can I see your driver's license and registration, because we're going to write you a ticket for a cracked windshield. Can I look at your windshield to see if the thing I thought I saw was cracked? There's no script for police to follow and background information. I mean, that's background information. Where do you live? What's your name? Where are you going? I think what's really revealed here, Your Honor, is they didn't pull him over because of a cracked windshield, even if they think they saw a crack. And, of course, you have a whole other issue about whether there was any basis at all for thinking there was any impairment of vision, because you can in California pull someone over just because of a cracked windshield. You can only pull someone over if it's a crack that impairs vision. The only evidence of any crack that impairs vision, there was never even testimony or a claim by the officer that the crack here impaired vision, if there was one. And, of course, he couldn't point it out in any picture or remember where it was. The only finding, and I don't think that's a fair characterization of it, was Judge Klausner's opinion that any crack in a windshield, no matter how small, if it catches the sun right, can impair vision. I don't think that's evidence. It's basically a judge relying on his personal opinion. Frankly, I spent a few months in Alaska where I saw lots of people driving around with cracked windshields. I would debate whether that opinion is a valid one. But there wasn't any evidence here of the impairment requirement that's necessary under the California Vehicle Code. Let me ask you a question. Why wouldn't it have been just as easy for them, rather than waiting for a cracked windshield at all, just to go out and stop him immediately? He's on parole. They have the circumstances already in their bailiwick of what he was supposed to have done. Just stop him. That's the third parole search issue, Your Honor. One of the parole search issues is, does this parole search statute in California allow that additional intrusion? Given what the Supreme Court, the good judge, has written about that, if we, I mean, in Idaho, which I now read into California law, and you can tell me if it's wrong, if you have some suspicion that they're doing something wrong, you can stop them any time you want to. Well, and they had an informant who had told them he was involved, he had stolen merchandise, he had guns, he had all this stuff, and why not just go stop him? Why wait for a cracked windshield at all? Your Honor, I don't think you can consider the informant information and that argument for two reasons. First of all, it's not an argument the government has made, certainly not below. If it had been made, we would have done some cross-examination. We actually think we know who that informant was, and we think the informant might have said he or she. We think that she never said those things. So we didn't get a fair opportunity to litigate the issue of whether the informant established suspicion of doing something wrong. The other question out there, though, is in California, under the California parole search statute, suspicionless parole searches are allowed in some contexts. So you don't need any suspicion. So the additional question that your Honors are faced with in this case is whether this California statute unambiguously and clearly expresses to a parolee not just that he can be searched any time, because Sampson held that that was found to be the case, but whether it also clearly and unambiguously expresses to the parolee that when he's driving his car down the highway at highway speed doing nothing wrong, assuming those premises, can he be pulled over by the police. Well, if a suspicionless search can take place in the sanctity of the home, why would a car be more protected? It's less intrusive on privacy, Your Honor, but it's more intrusive on freedom of movement. Remember, this is a parole search exception, not a parole seizure exception. That's why I'm making the point that you can't just take the parolee with you whenever you want to search his house. So there's a difference. It is less intrusive on privacy because homes are more private than cars. It is more intrusive on freedom of movement. But doesn't the search clause say you can search the home or the person? Yes. And Samson says, or at least implies, that when a person is walking down the street, you can stop them for the purpose of searching a person. So home, person, or property. Yeah. So an automobile is property. You can certainly search a parked car. The question is, and what it doesn't say, and this is the difference, and the question is whether this is worse than being stopped on the street, and there's some Supreme Court cases with language that suggests it is, the question is whether you can be stopped with flashing red lights and a siren or whatever while you're driving down a highway at 30 or 40 or 50 miles an hour, and whether that's different or worse than being stopped when you're walking down the street. That's why I offer the two Supreme Court cases, Delaware v. Prowse and United States v. Mendenhall, that the government said in its brief, we don't know why he's citing these. Those cases express the Supreme Court's view that it is more intrusive on freedom of movement. It is a greater seizure for someone to be stopped when they're driving their car down the highway and doing nothing wrong than for a police officer to simply walk up when someone's walking down the street and saying, hey, wait a minute. Can I talk to you for a minute? Are you a parolee? I need to do a parole search. It's a question before the court. There's no case law on it. The case law that is out there, the overlay, is that when you're talking about completely suspicionless searches, and, Your Honor, that's what you have to assume here since they didn't argue any sort of informant suspicion or probable cause below, and so we didn't litigate that. Assuming a suspicionless search, Samson requires that there be clear and unambiguous notice to the parolee that the conduct or intrusion in question is allowed, and here there isn't that clear and unambiguous notice. And then there's the same issues come up with respect to the destruction of property question. Is there clear and unambiguous notice that when a parole search is conducted, the property the parolee not necessarily owns but is using, and maybe someone else's property, cannot be destroyed? You have the same requirement I would submit there of needing clear and unambiguous notice to the parolee from the statute and condition that you don't have. Well, I guess I'm trying to figure out on that particular matter, if I once get to the property and I've gone around and I've said, can I get in, whose property it is, and everybody says it's his, and then you go up and you can't get in and you can't find the key, then it seems to me that I'm in United States v. Ramirez and United States v. Becker. I'm not on reasonable notice. I'm on is any destruction of the property resulting from the officer's forced entry excessive and unnecessary, or was it reasonably necessary to effectively execute the search? If there was a warrant or probable cause or at least reasonable suspicion, Your Honor, I'd say you're right. Well, but the bottom line is if we get past whether there was a suspicion to stop him or whether he could have been stopped, and we get past that particular matter, and now we're looking at whether they can get into the house, we're not on notice anymore. We're on is there excessive or unnecessary destruction and was it reasonably necessary? I think we're not, Your Honor, because remember here we're talking about a completely suspicionless parole search. The reason you can destroy property when you're executing a warrant is because there's been a warrant issued, there's been a finding of probable cause, there's been a looking at it by a judicial officer. The question is are you suggesting that in a parole search situation that there is no law to suggest excessive or unnecessary destruction of property is the standard? I'm suggesting when you're talking about a suspicionless parole search. Now, a suspicionless parole search isn't allowed in every jurisdiction. If you're talking about a suspicionless parole search, destruction of property is not allowed unless there's a statute or a condition that unambiguously and clearly expresses that the destruction of property is allowed. Let's say that someone in the house advised the parole officer or police officer or whoever was conducting the search that there was a bomb behind the door, but no one had the key to the door and the parolee would not provide a key. Are you suggesting that in that circumstance the officers could not kick in the door? No, for two reasons. First of all, there's probably exigent circumstances. Well, you didn't say that. You said unless there is a specific statute that allows them to destroy property, it cannot be done. That's what you said. Only for a suspicionless search, Your Honor. I was talking about a suspicionless search. No, it's not suspicionless anymore if someone's informed the police that there's a bomb behind the door. It's somebody at the house. They've already entered the house. Oh, I'm sorry. It's not just suspicionless. Once they get in there, just like when they get in there and they ask the people whose room is that. It's not just suspicionless. So the entry of the house didn't involve any destruction of property. So the entry of the house, assuming all the other preliminary issues have been gotten past, the entry of the house is not a destruction of property problem. That's allowed by the California Parole Search Statute if there's been probable cause established that the parolee lives here. The question is, did they have any business damaging the door to get into the bedroom? What I'm saying is for that, there needs to be either some sort of suspicion or a statute that clearly and unambiguously says destruction of property is allowed. Because the state of California, it's a balancing of parolee rights. Did you have any cases that say that? No cases on the issue. The only cases I found are the border search destruction of property cases, the consent destruction of property cases, and the warrant destruction of property cases. Those are the only cases I've been able to find about destruction of property. So it's an issue of first impression for this court. What I am suggesting is, you know, the states always have – I'm not suggesting a state couldn't write a statute saying destruction of property is allowed when you're doing a suspicionless parole search. That's probably okay under SAMHSA. But this statute doesn't – Well, the parole search condition isn't a statute. Well, but in California, there's also a statute. There's a statute and then a condition pursuant to that statute that I believe pretty much maps it. If we disagreed with much of what you argue but concluded that the seizure and movement of the defendant was improper, what gets excluded? If only the movement from the scene of the stop is improper, then I think probably all that gets excluded are the statements. If there is impropriety in the handcuffing and or impropriety in the initial stop, then the results of the search would also be excluded and you don't need to reach any of the other parole search issues. So stop is bad because, one, there wasn't an impairment crack, and, two, parole search exception doesn't allow it. Everything gets suppressed. Stop, okay, but they ask questions that have nothing to do with the original purpose of the stop, and that's all, and or the handcuffing makes it into arrest, everything gets suppressed. If the only thing that was wrong is moving him from the scene after they detained him there for the half hour, I think they'd have to concede it's just the statements that get suppressed. What statements? The statements he made admitting the ammunition was his that was found in the house. Because the reason being that if they just left him at the scene the way they're supposed to and let him go after doing whatever parole search of his person and car they wanted to do, who knows when he would have been taken into custody and who knows what would have happened when he would have questioned and what mood he would have been in and so on and so forth. And there's some good case-wise thinking side on that point. You've exceeded your time. We'll give you a minute for a vote. Thank you, Your Honor. Good morning, Your Honor. It's Joseph Whitman. May it please the Court on behalf of the United States. There's obviously a lot of issues in this case. The government submits there's one eminently simple and logical way to resolve it. The evidence that was the subject of the motion to suppress was not derived from the allegedly illegal traffic stop, the allegedly illegal handcuffing, the allegedly illegal questioning, the allegedly illegal movement. Opposing counsel takes the position that this argument was not made in district court. What's your response to that? The facts that underlie this argument were presented before the district court, vetted by the parties in the declarations and in front of the witnesses. What about the specific argument that the evidence derived from the search was derived from the search rather than the stop? Was that particular argument made to the district court? The government did argue that. I believe this argument was made in the government's summation or the argument. What is that in the record? I don't have the page reference for the court, but my understanding of the law is that this court is permitted to affirm based on facts that are in the record and that were litigated below, and these facts were in the record and litigated below. So you're saying that we can affirm on any basis that's supported in the record and even if it weren't argued in the district court, there's still a basis for us to affirm on that argument? Yes, Your Honor. And, you know, to walk through these issues, with respect, just to continue on what I was saying at the outset, the stop and all that stuff, assuming that there was something wrong with that, that does not lead to suppressing the ammunition found at the house and the subsequent statements, because the officers the government submits, even without anything that was derived from the stop, had probable cause to believe that he lived at that house and therefore a parole search was appropriate and justified under well-established authorities. The police had seen him exit and enter that house earlier that day. They had seen him exit that house and get in the car. They had information from a confidential informant, some of which actually pretty much all the evidence that they had at that point had been corroborated, including what he looked like, what kind of car he drove, and perhaps importantly also, when they went up to the house, before they began the search, they saw someone in the front yard, apparently no reason to lie, not a confidential informant, just someone who was speaking on a cell phone in the front yard, and they said, does he live here? Oh yes, he lives here. He lives upstairs. So the government submits, and none of that is derived at all from that traffic stop. That was enough for probable cause. And assuming the court has some discomfort with whether that's enough for probable cause, probable cause to believe that they can enter the house that he lived in, and assuming the court has some discomfort with that, which the government submits the court respectfully should not, then his statement moments after the traffic stop started, after he was handcuffed, that he lived there. He stayed. Stayed there. The government submits, however, that the undisputed evidence before the district court was that is street slang for live there, live that. Okay, assuming that initial part, we have to take something from the traffic stop, happened right in the beginning, and the government would submit that even if the court concludes the handcuffing was inappropriate, still, for purposes of an analyzing probable cause to believe that he lived there, they can consider that just like in a search warrant context. A judge deciding whether to grant a search warrant doesn't say, was this piece of evidence unconstitutionally seen? Was this piece of evidence unconstitutionally seen? And so forth and so on. So that certainly gets you way past the threshold that's necessary for probable cause, which, as this court knows, is not proof beyond a reasonable doubt, et cetera. The only question on your theory, Mike, what about the statements? Did he make some statements on the way to the house? The only statements he made on the way to the house were lies. He said he didn't live there. He told them he discharged his parole number. Were those statements introduced? Those statements were evident in the record before the district court, yes, but those are not the statements, I understand, that the defendant wishes to exclude. In fact, they're sort of self-serving lies. What he's trying to say is that he admitted the ammunition belonged to him during the riot on the way to the house. Do you challenge that representation? I think I could speak for defense counsel in the undisputed fact that he didn't make that statement on the ride in the car. He made it later, after he had been arrested for a parole violation for possession of the ammunition, after he had been Mirandized, then back at the police station he made those statements. It's very likely that he didn't make statements that the ammunition was his before the ammunition was found. That's correct. That's exactly right. He did not admit that the ammunition was him before the ammunition was found. I thought opposing counsel said that statement should be suppressed if we – well, maybe I misunderstood what counsel was saying. What I thought his representation was that statement should be suppressed because it was made during the ride. I think his position, and correct me if I'm wrong, was not that it should be suppressed for that reason, but it should be suppressed because it was – this is his position, I'm not taking it, but that it should be suppressed because it was the result of the illegal arrest and basically they never would have had him in those circumstances at that time and therefore it's speculation. I see. I believe that was his position, which the government disputes. So the government submits that that is the simplest, most logical, straightforward way to resolve what, as is evident from the defendant's presentation, can be quite complicated with all sorts of policy issues and numerous issues for the court to resolve. How do you respond to the argument that he wouldn't have been there at all, so his statement really is the result of his being improperly moved? When he made that statement, he was lawfully arrested for a parole search – excuse me, for a parole violation for possessing ammunition. This is not a parole, you know, for lying about where he lived. This is solid, evidence in hand. You had ammunition, we know you lived there. Bring him back to the station, waive his Miranda rights. Then he makes these statements. So the government submits that course of events, which is not directly challenged by this suppression motion, was perfectly constitutional in the evidence, his statement, the admission that he lived there and that that was his ammunition. Those should be – that's competent evidence that should be admissible before a district court. Is that sort of an attenuation argument or something? Well, any movement prior to that is sort of irrelevant. The government submits that what had happened hours earlier – and we're not talking about a statement he made right outside the car. Where did he make – how long after the ammunition was found did he make those statements? I think the evidence in the record is sort of vague on that. I mean, it was a period later. He was taken to the police station. There was a holding cell, a holding area. The officers came up to him. He made the statement at the station. Yes. And not at the house. Yes. That's exactly right. The incriminating statement was made back at the station after he'd been Mirandized, and there was actually a separate suppression motion laying all that out, and there was a plethora of evidence that he waived it. And with respect to a number of the other issues, the government submits that Your Honor is correct, that it was simply basic questioning. Are you on parole? What did they get back? A lie. A lie. They investigated that. I mean, the idea that the length of the traffic stop was impermissible, the government submits that's merit because it was largely the result of the defendant lying. And there are a number of other issues, and I'm happy to take them in turn unless the Court has any other questions concerning them. Well, my worry is if we're going to get back to the other issues, to stop in the first place. I mean, I have a duty to give the court, the district court, the option to look at the evidence and make findings. My worry is what evidence do I have based on his finding, to make his finding in this record? The evidence is? About something in the windshield. The evidence is the only evidence, actually, on this is the officer who said it in his declaration, came into court and testified under oath, was subjected to cross-examination. There was a crack. I remember there was a crack. The district officers say it was a crack which kept him from driving. I didn't see that in the record. No, he did not say that. However, the district court correctly found, based on the circumstances of the day, so it was a very sunny day, that a crack, even if it's a small crack, depending on the circumstances, I mean it was the middle of the day, can impair vision. And mind you, Your Honor, respectfully, this was not a situation where they immediately brought him a ticket for the cracked windshield. They were investigating it. It was a Terry stop. They were saying, oh, you know, I think the car was driving by. A fleeting moment to see the crack. He saw the crack. There was no evidence that he didn't see the crack. The district court credited him when he said, I saw the crack. They investigated it. A couple simple questions later, after the defendant had lied about being on parole, this chain of events began. But the initial stop was justified. It's a matter of, you know, it's not de novo. It's factual judgment made by the district court. There was competent evidence. In fact, it was the only competent evidence on whether there was a crack or not, was that there was a crack. And there certainly is no dispute about what time of day it was and so forth and so on. So the government disagrees that he disagrees with the common sense opinion of the judge and so forth and so on. It was a factual finding. And there is plenty of undisputed evidence regarding it. And with respect to the alternative grounds, as set forth in our brief, he was on parole. They knew he was on parole. But counsel suggests with some credibility that if that was going to be your argument, why didn't you make it a trial so they could have responded? With respect to that they had independent authority to pull him over because he was on parole, we did make that argument. And I don't believe the defense claims that we didn't make that argument before the district court. Well, maybe I misunderstood him then because my idea was, well, if he's on parole and we have this evidence out there that says that he's got weapons, why can't we just walk in and take him? Why did we have to wait for him to drive? Well, the government submits that they had authority because they knew he was on parole. They didn't. I mean, there's alternative grounds here. He's good. Go ahead. Why did they argue about the cracked windshield? If the parole status was the basis for stopping him, why would you go through the pretext of or say that there's a cracked windshield if you just could grab him because he's on parole? I don't understand why the police would proceed that way if they were relying on the parole status. The government doesn't submit that in their own minds, from a legal perspective, they were relying on the parole status. I mean, as is evident, they were told, if you see him violating a traffic law, pull him over. However, as a legal matter, they did know he was on parole. So in the alternative, as a legal matter, they were within their rights to pull him over on that basis. But that's the problem. That's when I heard counsel say, they can't argue that. They didn't argue it below. Now they want to bring it up. But if they'd argued it below, we had a lot of things we were going to talk about. That's why they didn't bring it up. I think that was with regard to the suspicion arising from the confidential informant. I agree with that. I agree. So that if there's reliance on the alternative suspicion, there was no opportunity for them to litigate that. Yes, and may I briefly address this issue of the confidential informant? The information from the confidential informant, the presence of a confidential informant, how it affected what the officers knew, confidential informant, it wasn't just presented before the district court. It was in the original declarations and the government's original opposition to this motion was references to the confidential informant. Confidential informant told us he lived there. Confidential informant gave us a physical description, which, of course, was accurate. Confidential informant told us he drove the kind of car that he drove. All that was corroborated. That was all in their minds. It certainly is relevant to assessing what the officers knew and how reasonable it was that they took the steps that they did. So the government believes that the contention from defense regarding that lacks merit. Sorry. Thank you, Your Honor. And if there's no other questions, the government submits on the briefs. All right. Thank you, counsel. McButtle. Maybe I can pick up on that last point and just clarify what I'm arguing and what we believe was and wasn't presented. Judge Canby is correct, Judge Smith. What I was arguing is you can't go to some alternative idea that this wasn't a completely suspicionless parole search, but there was some suspicion from the informant, because the government never argued that below. There were references to the informant in the factual declarations, but the government never argued that what the informant had told the officers established some level of suspicion that somehow made the parole search okay, even if a suspicionless parole search wasn't. And if they had ever argued that, we would have gone out and tried to bring in the person who was the informant, put him on the stand, and really litigated that issue. We didn't litigate it because they argued all along that this was a suspicionless parole search and there was no suspicion needed. They didn't argue that even if a suspicionless wasn't okay, there was some suspicion out there. So that's my argument about what can and can't be considered. On the inevitable discoveries, Your Honor, there was a lot of discussion about that. I tried to brief that as much as I could at pages 1 to 4 of my reply brief. On the question of the statement, there's a really nice quote from a Third Circuit case on page 4 of my reply brief. The point on why the statement made at the police station is a fruit of taking Mr. Norris with them to the scene of the search is if they hadn't taken Mr. Norris with them was the only reason they could take him to the police station and question him right after they found the ammunition. Otherwise, he could have been wherever. They would have had to go find him. It could have been hours, days, weeks later before they found him and arrested. And who knows what he would have said at that point in time in those different circumstances. That's very speculative. But the burden's on the government to show inevitable discovery. And the point I'm making is it's the government that's speculating that the same statement would have been made in those circumstances. And there's a really good quote that I... The government is saying that the evidence was derived from the house as opposed to derived from the stop. They're basically saying even if we hadn't taken him with us to the house, then we would have arrested him sometime later and he would have made the same statement then as far as the statement being a fruit. And they're saying he would have made the same statement in those circumstances later. And the cases, I think, really disabuse the idea of applying the inevitable discoveries there. Also, I think the search... The government... I don't think they can argue the search would have taken place anyway because if you read the record here, it's really clear how they had this set up. They were going to hope to have a reason to stop Mr. Norris. They were only going to stop him if they came up with some traffic violation. And then they were going to try to ask him some questions. One of the questions they asked him was, where do you live? And they were hoping he'd say at the house. And then they were going to use that to do the search. The burden's on the government to show they would have done the search anyway. The government... They briefly argued that orally below after the evidentiary hearing. They never argued it in their papers before the evidence was in. What about the premise that we may affirm on any basis supported by the record? Not if it's not an argument that was raised below. And my position is it's not enough if they throw in two pages of oral argument after the evidentiary hearing is over. What case says that if there is a legal theory under which we may affirm that it has to be argued in the district court? I'm not sure that that's correct. My position is this isn't a legal theory, Your Honor. It's a fact-based theory. Because if we'd known they were arguing that, what they have to show is not that the officers could have done a search because they had probable cause or some level of suspicion. They'd have to show they would have done it. And we would have asked those officers... The thing is that the evidence was derived from the house search and not from the stop. Right, but under the Murray case that I cite in my papers, what the government has to show is not just that they could have done a search even without the illegality, say the illegal stop. They have to show they, in fact, would have done it. That's what Murray says. And here, if we'd known they were making that argument, we would have asked those officers, and I think they would have admitted, that no, we weren't going to do the search until we stopped them at some sort of traffic stop or something and asked them where he lived, and hopefully he would have admitted that. Because if you read the record, that's probably what was going on. And we never got a chance to litigate that because they never made that argument below. The point is, if legally they could have done the search without doing the stop, what difference does it make? According to Murray. Your Honor, I cite the case in my paper on page 3 of my reply brief, Murray v. United States. In Murray, the officers had searched, I believe, a warehouse and found some marijuana without a warrant. And then they realized maybe they made a mistake. They went back and got a warrant, and they were able to show that they easily could have gotten the warrant without the earlier search of the warehouse because nothing they put in the warrant had anything to do with that. So they could have done the later search without having done the first illegal search. That's a fair court case. Yes. In your brief? Yes, page 3. What the court held, though, Your Honor, was the government not only had to show the officers could have done it anyway, they had to show that they would have done it anyway because even though they maybe could have gotten the search warrant, it wasn't clear that they would have done it if they hadn't already found the marijuana. My point here is whether or not these officers could have searched the house without stopping Mr. Norris and getting his statement about, quote, staying at, unquote, there, they wouldn't have. And if we'd known the government was making that argument before we went through the evidentiary hearing, we would have asked the officers questions about that. And I bet they would have admitted exactly what I'm suggesting because the record really paints a pretty clear picture that that's what they were thinking of. I understand. Thank you. Thank you to both counsel. The case just argued and submitted for decision by the court. That concludes the calendar for today. We'll be in recess until 9 a.m. tomorrow morning. Your Honors, I do have one supplemental authority letters I was going to be submitting. I can either give that to the clerk now or just file it electronically. File it electronically. All right. Thank you.
judges: Canby, Rawlinson, Smith N. R.